**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IAN T. MAYNARD, : Civil Action No. 11-0605 (WJM)

Petitioner, :

v. : **OPINION**

ROY L. HENDRIX, :

Respondent. :

**APPEARANCES:**

Petitioner pro se
Ian T. Maynard
Essex County Correctional Fac.
354 Doremus Avenue
Newark, NJ 07105

Counsel for Respondent
Jordan Milowe Anger
Assistant U.S. Attorney
970 Broad Street, 7th Floor
Newark, NJ 07102

**MARTINI**, District Judge

Petitioner Ian T. Maynard, an alien detainee, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,[1] challenging his prolonged detention in connection with removal proceedings.

[1] Section 2241 provides in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
> (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

The sole respondent is Roy L. Hendrix, warden of Essex County Correctional Facility in Newark, New Jersey.

This matter is presently before the Court pursuant to Respondent's submission of a Motion [9] to Dismiss and an Answer requesting, in the alternative, that the Petition be denied on the merits.

## I. BACKGROUND

Petitioner was born on April 14, 1969, in St. Kitts-Nevis, and entered the United States on August 2, 1979. Petitioner was never naturalized as a citizen of the United States.

Upon his release from jail, Petitioner entered immigration custody on or about June 28, 2010. Prior to his entry into immigration custody, immigration officials had determined that, based on his criminal history,[2] Petitioner must be detained pending a final determination of his removability. See 8 U.S.C. § 1226(c)(1)(B). See also 8 U.S.C. § 1227(a)(2)(A)(ii) (relating to conviction of two or more crimes involving moral turpitude).

The original Notice to Appear asserted removability solely based upon Petitioner's March 2003 conviction of the offense of

[2] It is not in dispute that Petitioner has been convicted in the Superior Court of New Jersey, Essex County, of: (1) violation of N.J. Stat. 2C:35-5b(3) (possession with intent to distribute heroin) (November 6, 1997); (2) violation of N.J. Stat. 2C:35-10a(1) (manufacture, distribute and/or dispense heroin and cocaine) (March 3, 2000); (3) violation of N.J. Stat. 2C:35-5b(3) (possession of a controlled dangerous substance, here, cocaine) (April 3, 2003).

possessions with intent to distribute controlled dangerous substances in violation of N.J.Stat. 2C:35-10a(1). On July 15, 2010, less than one month after Petitioner entered immigration custody, his removal proceedings began. There were a total of 14 adjournments during the course of those proceedings. It is undisputed that ten were at the request of Petitioner, to seek representation or to prepare his case and applications for relief, three were made for administrative reasons, and one was made at the request of the government.

During the proceedings, on November 5, 2010, the government amended the charges relating to Petitioner's removability to include all three of Petitioner's drug convictions. The amended charging document was served on Petitioner four days later, on November 9, 2010. Petitioner does not appear to have disputed the convictions. In addition, the schedule of adjournments does not reflect that any adjournment resulted from this amendment. More specifically, the hearing scheduled for November 4, 2010, before the amendment, was adjourning to allow Petitioner to prepare his case and the hearing scheduled for December 8, 2010, after the amendment, was continued because there was insufficient time to complete the hearing. (Motion to Dismiss, Ex. E.)

On January 27, 2011, approximately seven months after he entered immigration custody, and while his removal proceedings were ongoing, Petitioner submitted this Petition for writ of

habeas corpus, challenging his prolonged pre-removal-order detention and urging this Court, under the Due Process Clause of the Fifth Amendment, to construe the relevant detention statute as not authorizing his continued detention in the absence of a constitutionally adequate custody hearing, especially where he has "substantial challenges" to his removal.[3]

On May 18, 2011, the Immigration Judge ordered Petitioner removed. Two days later, on May 20, 2011, Respondent moved to dismiss the Petition, asserting that Petitioner's continued detention was lawful and constitutional under the U.S. Supreme Court decision in Demore v Kim, 538 U.S. 510 (2002). In the alternative, Respondent answered the Petition and requested that the Petition be denied on the merits. As noted by Respondent, the Order of Removal would become final in thirty days, or on June 17, 2011, unless Petitioner appealed to the Board of Immigration Appeals.[4] See 8 C.F.R. § 1003.28(b).

---

[3] Petitioner does not elaborate on the nature of the alleged "substantial challenges" to his removal.

[4] This point is significant because, once an order of removal becomes final, detention continues under 8 U.S.C. § 1231(a), which governs the detention and removal of an alien subject to a final order of removal. Thus, if Petitioner were now detained under the post-removal-order statute, § 1231(a), the issue of the propriety of his earlier detention under the pre-removal-order statute, § 1226(c), probably would be moot.

Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period." Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such

In his Reply, dated June 7, 2011, Petitioner did not state whether he had appealed, or intended to appeal, the Immigration Judge's removal decision to the Board of Immigration Appeals. Neither party has updated the Court on the current status of the removal order or of any appeals that may have been filed.[5] As Respondent is under order of this Court to advise the Court within seven days of any change in Petitioner's custody status, see Order [5] to Answer, this Court will proceed under the understanding that the order of removal is not yet "final" and that Petitioner remains detained under § 1226(c).

## II. ANALYSIS

Title 28 U.S.C. Section 1226(c) requires federal immigration authorities to take into custody any person who is removable from this country because he has committed certain crimes, including, for example, certain crimes involving moral turpitude or controlled substances. Pre-removal-order detention under this

---

post-removal-order detention is subject to a temporal reasonableness standard. Specifically, subject to certain limited exceptions, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See generally Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

[5] As of the dates the Motion/Answer and Reply were filed, Petitioner had available to him the option to appeal the order of removal to the Bureau of Immigration Appeals and, if unsuccessful, thereafter, to seek review in the Court of Appeals. The Court notes that a PACER search of filings in the United States Court of Appeals for the Third Circuit reflects that no petition for review has been filed in that Court.

statute is mandatory, does not permit release on bond, and does not, by its terms, impose any limitations on the length of detention.[6]

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court considered whether mandatory pre-removal-order detention under § 1226(c) violates due process. In the case of an alien who conceded that he fell within the categories of deportable aliens subject to mandatory detention under § 1226(c), the Supreme Court found that detention of deportable criminal aliens pending their removal proceedings did not violate due process. 538 U.S. at 531. The Court noted that such proceedings typically last only a few months and, in contrast to the potentially indefinite post-removal-order period detention rejected in Zadvydas v. Davis, 533 U.S. 678 (2001), pre-removal-order detention has a finite termination point.[7] 538 U.S. at 529-530. In his concurrence, Justice Kennedy took the position that circumstances could arise

[6] Although § 1226(c) does not provide for bail, an alien detained pursuant to § 1226(c) may move for a Joseph hearing to determine if he falls within the categories of aliens subject to mandatory detention. In re Joseph, 22 I.&N. Dec. 799 (BIA 1999). At the Joseph hearing, a detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime(s), or that the BICE is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. See 8 C.F.R. § 3.19(h)(2)(ii). Here, there is no dispute that Petitioner falls within the class of criminal aliens subject to mandatory detention under § 1226(c).

[7] The petitioner in Demore had been detained approximately six months at the time his petition was decided.

in which long-term pre-removal-order detention might violate due process. 538 U.S. at 532-33 (Kennedy, J., concurring).

While this matter was pending, the Court of Appeals for the Third Circuit addressed the question whether prolonged detention under § 1226(c) can ever violate an alien's right not to be deprived of liberty without due process. See Diop v. ICE/Homeland Security, 656 F.3d 221 (3d Cir. 2011). Applying the principle of statutory construction that "'when an Act of Congress raises a serious doubt as to its constitutionality, ... [courts] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided," Diop, 656 F.3d at 231 (quoting Zadvydas, 533 U.S. at 678), the Court of Appeals concluded that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." Diop, 656 F.3d at 231. "[W]hen detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Id. at 233.

The Court of Appeals held that reviewing courts "must exercise their independent judgment as to what is reasonable."

Diop, 656 F.3d at 234. The Court declined to adopt any one-size-fits-all approach to the length of pre-removal-order detention that should be deemed reasonable. To the contrary, the reasonableness determination must take into account a given individual detainee's need for more or less time, the exigencies of a particular case, and errors in the proceedings that cause unnecessary delay. Id. Nevertheless, the Court noted that, given the fact that the Supreme Court believed that the purposes of the statute would be fulfilled in the vast majority of cases within a month and a half, and five months at the maximum, "the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds." Id.

In Diop, the petitioner had been detained for three years at the time his petition was decided. Although the removal proceedings had included several continuances at the petitioner's request, the proceedings had been prolonged also because of numerous errors by the immigration judge, necessitating appeals, combined with the government's failure timely to secure evidence that bore directly on the issue of whether the petitioner was properly detained.

Here, without benefit of the Diop decision, Respondent has urged this Court to dismiss the Petition on the ground that, under Demore, there is no "reasonableness" limitation to the

length of detention under § 1226(c). As noted above, the Court of Appeals rejected this position in its opinion in Diop. Thus, this Court must deny the Motion to Dismiss under Demore.

Even without benefit of the Diop decision, however, Respondent argued that the length of Petitioner's detention was not unreasonable, because the length of the proceedings was due primarily to Petitioner's actions, and asked this Court to deny the Petition. This Court agrees that the length of Petitioner's detention was not unreasonable.

Petitioner appeared for his first hearing less than three weeks after entering immigration detention. Petitioner filed his Petition approximately seven months after entering immigration detention, only a short time longer than the petitioner in Demore was detained, a period clearly not unreasonable, especially in light of the fact that, of the seven continuances during that period, one was at the request of the government, one was because there was insufficient time to complete the hearing, and the remaining five were at the request of Petitioner. By the time Respondent answered the Petition and moved to dismiss, approximately eleven months had elapsed. As noted above, during that time, Petitioner had ten times requested continuances to obtain counsel or prepare his case. (Motion to Dismiss, Ex. E, Decl. of Immigration Court Administrator Charlene McLaughlin.)

In his Reply, while arguing (correctly) that § 1226 contains an implicit "reasonableness" limitation, Petitioner offered nothing to explain why the particular facts surrounding the length of his detention rendered his detention unreasonably prolonged. As in Demore, Petitioner does not contest that he falls within the categories of criminal aliens subject to mandatory detention under § 1226(c). Contrary to the situation presented in Diop, Petitioner cannot point to numerous errors by the Immigration Judge necessitating numerous appeals. Instead, the delays here are attributable almost exclusively to Petitioner's repeated requests for adjournments. Nevertheless, Petitioner has provided this Court with no explanation of the reasons for the repeated requests for continuances. Petitioner cannot repeatedly request continuances and then complain that the resultant prolonged detention is unconstitutionally unreasonable. To the extent there has been any delay since briefing on this matter was completed, Petitioner again has failed to apprise this Court of the relevant circumstances. Accordingly, this Court finds that Petitioner's detention has not been unconstitutionally prolonged.

III. CONCLUSION

For the reasons set forth above, the Motion [9] to Dismiss will be denied, but the Petition will be denied on the merits, without prejudice to Petitioner filing a new and separate petition should his continued detention become unreasonably prolonged. An appropriate order follows.

s/William J. Martini

William J. Martini
United States District Judge

Dated: December 12, 2011